**Dated: January 17, 2020**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALL PHASE ROOFING AND | ) | Case No. 17-12414-SAH |
| CONSTRUCTION, LLC | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SUSAN MANCHESTER, Trustee of ALL | ) | |
| PHASE ROOFING AND CONSTRUCTION, | ) | |
| LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 17-01070-SAH |
| | ) | |
| RICKY SHARPTON, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

On August 26 and 27, 2019, the Court conducted a trial on the Complaint [Doc. 1], filed

on November 1, 2017 (the "Complaint") by Susan Manchester ("Plaintiff"), Trustee of All Phase

Roofing and Construction, LLC ("All Phase LLC"), against Ricky Sharpton ("Defendant"),

president and owner of All Phase LLC.  Attorney Susan Manchester appeared on behalf of

Plaintiff, and Gary Hammond appeared on behalf of Defendant.[1]  As directed by the Court at the

conclusion of trial, but after obtaining an extension of time, the parties filed their written closing

arguments on October 10, 2019.[2]

## JURISDICTION

The Court has jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1334(b), and

venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper

pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C.

§ 157(b)(2)(E) and (H).  Additionally, the parties consented to this Court's entry of final orders

pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012.

## BACKGROUND

Defendant previously operated a roofing and construction business in the form of All

Phase LLC, a single member limited liability company organized in February 2012.  In December

of 2016, All Phase LLC allegedly ceased operations, and Defendant began conducting the same

roofing business as All Phase Roofing Systems ("All Phase Systems"), a sole proprietorship or

D/B/A.  All Phase LLC's bank statements and Defendant's income tax returns clearly indicate

Defendant had a serious gambling habit during this same time period.  All Phase LLC filed its

chapter 7 bankruptcy petition on June 18, 2017.  Defendant filed his personal chapter 7

_____

[1]Defendant was previously represented in his bankruptcy case and this adversary
proceeding by Rex D. Brooks, who passed away on March 29, 2019.

[2]The trial conducted in this matter also included trial of Plaintiff's Complaint against
Defendant filed in Adversary Proceeding 18-01038 in Defendant's bankruptcy case (Case No.
17-15219).

bankruptcy petition on December 31, 2017.  In her capacity as trustee of the bankruptcy estate of All Phase LLC, Plaintiff filed her Complaint asserting numerous causes of action under 11 U.S.C. §§ 544, 548(a)(1)(A) and (B), 542 and 550(a) and (b),[3] and the Oklahoma Uniform Fraudulent Transfer Act, 24 O.S. §§112, et. seq., for avoidance and recovery of fraudulent transfers.[4]  In his Answer [Doc. 9], Defendant counterclaimed asking the Court to order Plaintiff to abandon All Phase LLC's assets.  The Court declines to consider Defendant's counterclaim because a request for such relief should have been brought pursuant to motion under Section 554.[5]

In making the following Findings of Fact and Conclusions of Law, the Court considered:

a.     The Final Pretrial Order [Doc. 82] (the "Pretrial Order"), entered on August 19, 2019;

b.     The trial record, including exhibits introduced by Plaintiff and Defendant and admitted by the Court, and the testimony of Defendant;

c.     Ricky Sharpton's Closing Arguments filed by Defendant on October 10, 2019 [Doc. 89] ("Defendant's Closing Arguments"); and

---

[3]Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

[4]In Adv. Pro. 18-01038 filed in Defendant's bankruptcy case, Plaintiff seeks to deny Defendant a discharge pursuant to Section 727(a)(2) and (7) for the alleged fraudulent transfers of All Phase LLC's assets and to establish that Defendant owes the bankruptcy estate of All Phase LLC a nondischargeable debt pursuant to Section 523(a)(2).

[5]A motion to abandon under Section 554 would afford notice to creditors of All Phase LLC's bankruptcy estate who did not receive notice of this adversary proceeding.  See Miller v. Miller (In re Miller), 302 B.R. 705, 710 (10th Cir. 2003) (Fed. R. Bankr. Pro. 7001(1) excludes a proceeding under Section 554(b) from the definition of adversary proceeding).

3

d.     Plaintiff-Trustee's Closing Argument filed by Plaintiff on October 10, 2019

[Doc. 90] ("Plaintiff's Closing Argument").

## **FINDINGS OF FACT**

### **Relevant Pre-Bankruptcy Background**

1.   Defendant filed the Articles of Organization of a Limited Liability Company for All Phase LLC with the Oklahoma Secretary of State on February 16, 2012.  Trustee Ex. 5.  All Phase LLC was a single member LLC, and Defendant was the sole owner and president thereof.

2.   On July 2, 2013, Defendant transferred real property located at 3400 East Airport Road, Stillwater, Oklahoma (the "Real Property") by quit claim deed from himself to All Phase LLC.  Trustee Ex. 20.  Defendant claims the Real Property was conveyed to All Phase LLC to facilitate All Phase LLC obtaining a loan, but that it was "really" owned by Defendant.

3.   At all relevant times, Defendant lived in a mobile home located on the Real Property (the "Mobile Home").

4.   In October 2014, All Phase LLC borrowed money from BancFirst and granted a mortgage lien on the Real Property to BancFirst to secure such indebtedness.  Trustee Ex. 23. Defendant did not reveal to BancFirst that he, rather than All Phase LLC, "really" owned the Real Property.

5.   Defendant personally guaranteed All Phase LLC's indebtedness to BancFirst. Defendant Ex. 3.

4

6.      In October 2016, Defendant, on behalf of All Phase LLC, entered into a Payment Rights Purchase and Sale Agreement ("Funding Agreement") with Everest Business Funding ("Everest").  Defendant personally guaranteed payment under the Funding Agreement.  Trustee Ex. 13.

7.      In conjunction with the Funding Agreement, and around the time he received funds thereunder during the first week of November 2016, Defendant executed an Affidavit of Confession of Judgment to be filed in the event of default.  Trustee Ex. 14.

8.      All Phase LLC defaulted under the Funding Agreement with Everest on approximately December 7, 2016.  Everest filed Defendant's Confession of Judgment in the Supreme Court for Nassau County, New York, on March 17, 2017.  Trustee Ex. 14.

9.      According to Defendant, All Phase LLC ceased conducting business on December 9, 2016.  Defendant consulted an attorney who advised him to file bankruptcy with respect to All Phase LLC.  Defendant planned to file bankruptcy at the beginning of 2017.  However, Defendant continued to do business ostensibly as All Phase Systems, a sole proprietorship/D/B/A.

10.     Per Defendant, after All Phase LLC shut down, it transferred the Real Property and various other assets – a Trailer, a 2011 Truck, Equipment, and Inventory (all defined below) – on December 12, 2016, to Defendant for no consideration.  Defendant testified that he made such transfers on the advice of his late bankruptcy counsel.[6]  Trustee Ex. 21.

_____

[6]Defendant's now deceased counsel obviously cannot be questioned about his advice. The Court cannot ignore that there is no corroborating evidence of any nature supporting Defendant's claim that his late counsel advised him to transfer assets from an insolvent, non-operating entity with outstanding creditors to himself for no consideration.  However, the Court notes that the

(continued...)

5

11.   In March 2017, All Phase LLC entered into a subcontract with Rupe Building Company (the "Rupe Helmer Contract"). The Rupe Helmer Contract was not entered into by Defendant d/b/a All Phase Systems, but by All Phase LLC. Although the Rupe Helmer Contract itself refers simply to "All Phase," the cover sheet clearly reflects "All Phase Roofing and Construction LLC" in three places. Trustee Ex. 30. Additionally, the Notice of Assignment attached thereto, which is dated in April 2017, assigns the payments due to "All Phase Roofing and Construction, LLC" thereunder to BancFirst and is signed by Defendant as Member/Manager of All Phase LLC, BancFirst, and Rupe Helmer. Trustee Ex. 30.

12.   Notwithstanding having allegedly ceased business in 2016, All Phase LLC continued to issue invoices to customers in 2017 prior to its bankruptcy filing, directing customers to make checks payable to "All Phase Roofing and Construction, LLC."[7] Trustee Ex. 31.

13.   Similarly, numerous customers issued 1099s to All Phase LLC for 2017 using its employer identification number, totaling $121,925.25. Trustee Ex. 33. Notwithstanding issuance of these 1099s, All Phase LLC reported no income for 2017.

---

[6](...continued)
transfers were subsequently disclosed on All Phase LLC's Statement of Financial Affairs when it filed bankruptcy, and the assets transferred were listed on Defendant's Schedule A/B in his bankruptcy case.

[7]Defendant claims to have failed to change the paperwork reflecting that he was doing business as All Phase Systems and not as All Phase LLC because it required him to get someone to change the computer system. The Court notes that Defendant also continued to use the All Phase LLC logo on the 2011 Truck and the Trailer notwithstanding All Phase LLC having allegedly ceased operations.

14.     Notwithstanding All Phase LLC's alleged cessation of business in December 2016, money continued to move in and out of All Phase LLC's bank accounts up to the bankruptcy filing in June 2017, **and** for several months thereafter.  Trustee Ex. 39

### All Phase LLC Bankruptcy Case

15.     All Phase LLC filed a voluntary petition under chapter 7 of the Bankruptcy Code on June 18, 2017 ("Petition Date").  Together with the voluntary petition, All Phase LLC filed its Schedules and Statement of Financial Affairs, which were signed by Defendant under penalty of perjury and on the reasonable belief that the information was true and correct.  Trustee Ex. 1, pp. 5 and 48.

16.     Defendant reviewed the voluntary petition, Schedules, and Statement of Financial Affairs and believed them to be correct.  At trial, he was not sure of their accuracy and frequently stated he relied on the advice of his late counsel.

17.     Defendant signed the All Phase LLC bankruptcy filings as President/Manager.

18.     Plaintiff is the duly appointed chapter 7 trustee assigned to the All Phase LLC bankruptcy case.

19.     All Phase LLC's Schedule A/B provides that it owned the following property on the Petition Date:

|  |  |
|---|---|
| BancFirst Account ending 7529 ("7529 Account")[8] | $    187.78 |
| 1999 SKYL HT WINN Mobile Home[9] | 15,000.00 |

---

[8]All Phase LLC had another BancFirst bank account ending in 9296 for tax purposes (the "9296 Account"); however, such account was never included on All Phase LLC's Schedules.

[9]Notwithstanding the Assignment of Title by Registered Owner being completed with All
(continued...)

7

| Miscellaneous machinery & equipment ("Equipment")[10] | 77,800.00 |
| Miscellaneous inventory of roofing materials ("Inventory") | 53,632.16 |
| Claim against JD McBride Construction LLC | 25,508.63 |
| Account Receivable | 6,208.71 |
| 2014 Ford F250 Super Duty-V8 | 25,375.00 |

Trustee Ex. 1, pp. 8-11.

19.    Per All Phase LLC's Schedule A/B, the total value of its assets as of the Petition Date was

$203,712.28.  Trustee Ex. 1, p. 6.

20.    All Phase LLC's Statement of Financial Affairs provides that it transferred the following

assets to Defendant on December 12, 2016:

| 3400 East Airport Road, Stillwater, Oklahoma | $76,000.00 |
| 2011 Ford F350 ("2011 Truck") | 7,225.00 |
| 2014 Cargo Craft of Texas Expedition 7022 trailer ("Trailer") | 4,300.00 |

Trustee Ex. 1, p. 41.

---

[9](...continued)
Phase LLC as the "purchaser" of the Mobile Home on October 9, 1999, and title, per the Oklahoma Certificate of Title on the Mobile Home identifying All Phase LLC as the owner of the Mobile Home, Defendant testified he owned it.  Trustee Ex. 17.  Defendant maintains that he always had possession of, and used, the Mobile Home and the Real Property as his homestead, notwithstanding their transfer to All Phase LLC to use as collateral for a business loan for All Phase LLC from BancFirst.  As Defendant was guarantor of the BancFirst loans in his personal capacity and was sole owner and manager of All Phase LLC, the Court can think of no legitimate reason to transfer the Mobile Home and Real Property to All Phase LLC or back to Defendant.

[10]An equipment list was created August 1, 2017, by Defendant.  Trustee Ex. 2.  A total value of $125,181 is hand-written on Trustee Ex. 2 but Defendant denied he wrote such value. He further testified, however, that the differences in values are the difference between what equipment was worth and its full replacement value.

21. Per All Phase LLC's Schedule D, its assets were subject to liens held by the following

    secured creditors:

| Creditor | Property subject to lien | Amount | Incurred |
|---|---|---|---|
| BancFirst | Real Property, inventory, accounts and equipment | $ 40,000.00 | 10/04/2013 |
| BancFirst | Inventory, accounts, equipment | 60,000.00 | 07/14/2016 |
| BancFirst | Inventory, accounts, equipment | 40,095.00 | 01/20/2016 |
| Bank of Lake Mills | All assets of All Phase LLC | 111,300.00 | 08/22/2016 |
| Comm'l Finance and Leasing | Business equipment, personal property, inventory, real property | 118,000.00 | 08/15/2016 |
| EBF Partners, LLC | All assets of All Phase LLC | 76, 218.94 | 10/26/2016 |
| Fora Fin'l Business Loans LLC | All assets of All Phase LLC | 113,052.72 | 08/22/2016 |
| Ford Motor Credit | 2014 Ford F250 Super Duty-V8 | 24,759.02 | 06/06/2014 |
| Green Tree Fin. Serv. Corp. | 1999 SKYL HT WINN Mobile Home | Unknown | 1999 |

Thus, the Real Property, 2011 Truck, and Trailer transferred from All Phase LLC to

Defendant on December 12, 2016, were also subject to liens of creditors at the time of the

transfers.  Per All Phase LLC's Schedule D, it owed secured creditors a total of

$583,425.68.  Trustee, Ex. 1, p. 6.

22. Per All Phase LLC's Schedule H, Defendant was identified as a co-debtor with respect to

    all of the secured debts listed above except Ford Motor Credit with respect to the 2014

    truck (which is not an issue in this case).  Trustee Ex. 1, pp. 33-41.

9

23.   Per All Phase LLC's Schedule E/F, it owed unsecured creditors a total of $350,103.39 on the Petition Date.  Trustee Ex. 1, p. 6.

24.   Per All Phase LLC's Schedule H, Defendant was identified as a co-debtor with respect to all of All Phase LLC's unsecured debts except four:  2.11-OESC, 3.6-IRS, 3.16-IRS, and 3.27-Scott Thomas PLLC.  Trustee Ex. 1, pp. 33-41.

25.   As of the Petition Date, All Phase LLC was insolvent.  Additionally, based on a review of Schedule D secured debt alone, All Phase LLC was insolvent at the time it transferred property to Defendant on December 12, 2016.

26.   All Phase LLC amended its Schedule G on June 2, 2018, adding the Rupe Helmer Contract thereto.  Trustee Ex. 3.

27.   Trustee has not sought to avoid any liens held by secured creditors in the All Phase LLC bankruptcy case.  Bky. Doc. Sheet 17-12414.

28.   More than two years have elapsed since entry of the order for relief in All Phase LLC's bankruptcy case, i.e. the Petition Date of June 18, 2017.

**Defendant Bankruptcy Case**

29.   Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code on December 31, 2017, approximately six months after All Phase LLC filed bankruptcy.  Together with the voluntary petition, Defendant filed his Schedules and Statement of Financial Affairs signed under penalty of perjury and declared to be true and correct (the "Schedules").  Trustee Ex. 8, pp. 73 and 81.

10

30.    Defendant's Schedule A/B provides that, among other assets, he owns the following:

| | |
|---|---:|
| Real Property and Mobile Home | $76,000.00 |
| 2011 Truck | 5,348.51 |
| 2012 Ford F250 truck ("2012 Truck")[11] | 6,865.67 |
| 2015 Honda 4 Wheel ATV | 4,300.00 |
| Miscellaneous office equipment & supplies ("Office Equipment") | 200.00 |
| Equipment | 77,800.00[12] |
| Inventory | 53,632.16 |
| Account Receivable | 6,208.71 |
| BancFirst Checking Account[13] | 53.56 |
| BancFirst Checking Account[14] | 113.83 |
| BancFirst Savings Account | 4.74 |
| Claim against JD McBride Construction LLC | 25,508.63[15] |

Trustee Ex. 8, pp. 16-22.

---

[11]All Phase LLC made all the vehicle payments and paid all of the insurance premiums on the 2011 Truck and the 2012 Truck (and took depreciation deductions thereon) until it filed bankruptcy. Similar arrangements existed for the Real Property, although it did not pay the real estate taxes per Defendant.

[12]Defendant admits it was an error to list the Equipment in his Schedule A/B as it was owned by All Phase LLC at all times.

[13]This is BancFirst account ending 9264 (the "9264 Account").

[14]It is a new account perhaps for All Phase Systems.

[15]This is the same claim as scheduled in the All Phase LLC bankruptcy case; Defendant testified it belongs to All Phase LLC, and he does not know why it was scheduled in his personal bankruptcy case.

11

31.    On his Schedule D, Defendant identified the claims of all the secured creditors listed on

All Phase LLC's Schedule D (at substantially the same amounts), except for Ford Motor

Credit Company's claim with respect to a 2014 Ford F250 Truck.  However, by the time

Defendant filed his voluntary petition, a motion for stay relief with respect to the 2014

Ford F250 Truck had been granted in the All Phase LLC bankruptcy case and, therefore, it

is not an issue in this case.  Additionally, Defendant's Schedule D includes Century Trucks

and Vans as a secured creditor in the amount of $5,348.51 secured by a lien on a 2011

Ford F150.  Trustee Ex. 8, p. 26.  Century Trucks and Vans is also noted as lien holder on

the Certificate of Title issued for the truck on the December 12, 2016, transfer date.

Trustee Ex. 16.

32.    On his Schedule E/F, Defendant listed each and every unsecured creditor and debt listed

on All Phase LLC's Schedule E/F (even those four not included on All Phase LLC's

Schedule H - see ¶ 24 above).  Trustee Ex. 8, pp. 31-51.

33.    In his Statement of Financial Affairs, Defendant listed his income from operating a

business as follows:

|  |  |
|---|---|
| January 1, 2017 - December 31, 2017 | < $   5,168.77> |
| January 1, 2016 - December 31, 2016 | 284,469.94 |
| January 1, 2015 - December 31, 2015 | 1,704.13 |

Trustee Ex. 8, p. 75-76.

34.    After the conclusion of Defendant's Section 341 meeting of creditors held on April 25,

2018, Defendant amended Schedule C on May 13, 2018, to reflect that the amount

claimed as exempt was 100% of fair market value, up to any applicable statutory limit rather than a stated value. Trustee Ex. 10.

35. On February 27, 2018, Defendant filed the following with the Oklahoma Secretary of State on behalf of All Phase LLC: (i) an Application for Reinstatement, which he signed as manager (and obtained a Certificate of Reinstatement); (ii) an LLC Annual Certificate, which he signed as president (and paid the filing fee to bring the LLC current); and (iii) Articles of Dissolution, which he signed as manager (and obtained a Certificate of Dissolution). Trustee Ex. 36 and 37. Per Defendant, he took these steps on the advice of his late counsel.

36. On April 28, 2018, Trustee objected to Defendant's claims of exemption with respect to the following:

| | |
|---|---:|
| Real Property | $76,000.00 |
| 2011 Truck | 5,348.51 |
| 2012 Truck | 7,500.00 |
| Equipment including Trailer | 10,000.00 |
| Office Equipment | 200.00 |
| Inventory | 10,000.00 |

Trustee Ex. 9. The objection was overruled except to the extent that Defendant's exemption in tools of the trade was limited to an aggregate of $10,000. See Order Granting in Part and Denying in Part Trustee's Objection to Debtor's Claimed Exemptions with Notice of Opportunity for Hearing and Notice of Hearing [Doc. 26 in Bky. 17-15219] entered on June 5, 2018.

13

37.    Defendant amended his Schedule G on June 2, 2018, to add the Rupe Helmer Contract

       which had been inadvertently omitted.  Trustee Ex. 11.

38.    Defendant further amended his Schedule C on June 19, 2018, to comply with the Court's

       order dated June 5, 2018, to identify no more than $10,000 in tools of the trade on

       Schedule C.  Trustee Ex. 12.

39.    The chapter 7 trustee in Defendant's bankruptcy case did not seek to avoid any liens on

       estate property.  Further, after inspecting the personal property of the estate, the chapter 7

       trustee abandoned the "estate's interest in all office equipment and supplies, machinery,

       and equipment used in business including, but not limited to cargo trailers, and

       miscellaneous inventory of roofing materials."  The trustee's stated reason for abandoning

       the personal property was that the total liens of BancFirst, Bank of the Lakes, and Fora

       Financial Business Loans, LLC far exceeded the value of the property.  See Docs. 25

       and 27 in Bky. 17-15219 filed on April 16, 2018 and May 1, 2018, respectively.

       Defendant's chapter 7 trustee subsequently filed an interim report indicating that none of

       the estate's assets had any net value in excess of liens, see Doc. 43 filed on July 19, 2018,

       and then issued a report of no distribution on December 5, 2018.[16]

### All Phase LLC Bank Accounts

40.    In calendar year 2016, Defendant took withdrawals, received cash, and made internet

       transfers to his personal accounts from All Phase LLC's 7529 Account as follows

---

    [16]It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132 (W.D. Okla. 2017).

(in round numbers):

| | |
|---|---:|
| January | $28,450 |
| February | 54,368 |
| March | 56,771 |
| April | 88,223 |
| May | 91,000 |
| June | 33,955 |
| July | 37,000 |
| August | 59,635 |
| September | 35,551 |
| October | 38,885 |
| November | 44,729 |
| December | 530 |

Trustee Ex. 39.  A substantial portion of the withdrawals were made at casinos and other gambling venues.

41.    In calendar year 2017, Defendant took withdrawals, received cash, and made internet transfers from All Phase LLC's 7529 Account as follows (in round numbers) notwithstanding All Phase LLC having ceased operations in December 2016:

| | |
|---|---:|
| January | $ 6,060 |
| February | 5,062 |
| March | 17,898 |
| April | 11,402 |

|  |  |
|---|---|
| May | 30,372 |
| June | 37,357 |

Trustee Ex. 39.

42.  Defendant essentially treated the funds in All Phase LLC's 7529 Account as his own personal funds and used them however he wanted to use them.

43.  When All Phase LLC filed bankruptcy, it had $838.24 in the 7529 Account, Trustee Ex. 39, but Defendant never turned such funds over to Plaintiff. Defendant testimony.

44.  When Defendant opened a bank account for All Phase Systems, All Phase LLC funds from 7529 Account and 9296 Account were deposited therein. Trustee Ex. 43.

**Defendant's Free Use of All Phase LLC's Assets**

45.  At trial, Defendant's oft-repeated mantra was, to paraphrase, that All Phase LLC and Defendant are one and the same, what one owned, the other owned. He was a single member limited liability company and did not understand All Phase LLC was a separate entity.

46.  All Phase LLC transferred the Equipment to Defendant but he could not state when or why it was not so identified in the All Phase LLC Statement of Financial Affairs as having been transferred to him. Defendant testified that he paid nothing to All Phase LLC for the Equipment.

47.  Defendant has, or at least had during the relevant periods here, a serious gambling habit, as was apparent from his bank account records. Per Form 1040 he filed with respect to tax year 2016, Defendant had income from All Phase LLC of $284,469.94, gains of $1,390,406.00, and gambling losses of $1,052,931.00. Trustee Ex. 28. Per Defendant,

16

the source of his gambling funds was money made through All Phase LLC.

48.   On his 2016 Form 1040, Defendant reported $56,957.00 owed to it on contracts not

payable until 2017.  Trustee Ex. 28.  Defendant then testified he took income received in

2017 on All Phase LLC contracts personally.  He, however, did not list such income on his

Statement of Financial Affairs.  Trustee Ex. 8, p. 74-75.  Meanwhile, All Phase LLC only

reflected $40,000 as having been paid to insiders, i.e. Defendant, in 2016.[17]  Trustee Ex. 1,

p. 47.

49.   Defendant's 2017 Form 1040 reflects no income from a business, but gambling gains of

$66,850.00.  Trustee Ex. 29.  When asked for the source of the gambling funds, he first

suggested it was from his own "Systems" jobs.  However, when it was pointed out that

such funds would have been reportable income, he backtracked and said he did not know.

50.   Defendant testified that he knows that there was income in 2017 from operation of a

business, but does not know why the filed 2017 Form 1040 reflected no income.

51.   The filed 2017 Form 1040 also includes an "Affidavit Verification of Dissolution for Tax

Reporting" stating that All Phase LLC was dissolved for tax reporting purposes effective

December 31, 2016 (the "Affidavit").  Defendant executed the Affidavit on March 18,

---

[17]The reason for the discrepancy between the Statement of Financial Affairs and his 2016
tax returns as to All Phase LLC income to Defendant was explained by the 2016 tax return not
being completed until October 2017, and the income figure on the Statement of Financial Affairs
being only an estimate.  This is an incredulous explanation since a quick review of the All Phase
bank statements reflects that he took well over $40,000 out of All Phase LLC for his personal
benefit in 2016.  In the year June 2016 - July 2017, Defendant took in excess of $342,000 from
All Phase LLC for his own use and benefit.  It is inconceivable that $40,000 could be a fair
estimate.

2019, on the advice of his accountant.  Defendant admitted that All Phase LLC received income in 2017 but could not explain how as it was dissolved in 2016.[18]

### Credibility Issues

52.    To say it was difficult for Plaintiff to get full discovery from Defendant would be an understatement.  Some documents were only provided to Plaintiff shortly prior to trial. Plaintiff previously had to obtain this Court's assistance in compelling Defendant to comply with her discovery requests.  See Doc. 41, 45, 52, and 77 in Adv. 17-01070. Defendant's conduct was simply inexcusable with respect to the delay and trouble imposed on Plaintiff and suggests a lack of candor and a desire to prevent Plaintiff from thoroughly investigating his financial affairs and those of All Phase LLC.[19]

53.    Defendant was the primary witness at trial.[20]  He was understandably uncomfortable on the witness stand, testifying for well over a day.  The Court struggled with many of his explanations and inability to recall events,[21] finding him to be an often-confused,

---

[18]Defendant received over $98,000 from All Phase LLC in 2017, reported no income on his 2017 tax return, and negative $5,166.77 in income for 2017 in his Statement of Financial Affairs, question 4.  Trustee Ex. 29, p. 1; Trustee Ex. 8, p. 74.

[19]Given the inexcusable conduct of Defendant and his counsel, the Court awarded Plaintiff her attorney fees as sanctions against Defendant and his counsel, jointly and severally.  Doc. 77.

[20]James Dailey, Defendant's accountant, was the only other witness at trial.  The Court found his testimony to be relatively uninformative.

[21]This was showcased by Defendant's seeming inability to answer many of Plaintiff's questions with anything but an "I don't know" or "I can't recall," but then being able to go through a bank statement on the second day of trial and specifically identify and explain the purpose of nearly 100 banking transactions from May, June and July 2017.

unsophisticated debtor who, at a minimum, did not have a thorough understanding of Plaintiff's claims against him.

54.    The Court also struggled with Defendant's repeated excuse that he relied on the advice of his late counsel primarily because, in the Court's opinion, if the advice was, in fact, given, it was poor advice and often required Defendant to swear under oath and under the penalty of perjury to known false facts.  Unfortunately, Defendant's counsel passed away in early 2019 and was, therefore, unavailable for confirmation much less examination, making Defendant's scapegoat arguments most convenient.  Additionally, as set forth above, Defendant professed his belief was that he and All Phase LLC were "one and the same" numerous times.  As unbelievable as that sounds, Defendant never wavered from that position.  He never answered any of Plaintiff's questions inconsistently with such position, nor made any statements that would lead the Court to doubt that such position was his genuine, though obviously incorrect, belief.  However, as discussed below with respect to Defendant's actual intent to hinder, delay, or defraud creditors, a person's actions and deeds often speak much louder than his words.

## CONCLUSIONS OF LAW

### I.    Law Regarding Claims for Avoidance and Recovery of Fraudulent Transfers.

Plaintiff seeks to avoid various transfers as actually or constructively fraudulent pursuant to Sections 544 and 548(a)(1)(A) and (B) and Oklahoma's version of the UFTA ("OUFTA").[22]

---

[22]Considering the similarities of language and purpose, numerous courts have concluded the OUFTA and Section 548 are in pari materia, and that the same analysis applies under both laws.  Soule v. Alliot (In re Tiger Petroleum Co.), 319 B.R. 225, 232 (Bankr. N.D. Okla. 2004). Therefore, for brevity and simplicity, the Court refers to Plaintiff's fraudulent transfer claims only

(continued...)

Further, Plaintiff seeks to recover such transfers or their value from Defendant pursuant to Section 550(a).

Generally speaking, fraudulent transfer law allows a creditor, or one standing in a creditor's shoes, to set aside or "avoid" transactions which improperly deplete a debtor's assets. Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 435 B.R. 866, 875 (Bankr. S.D. N.Y. 2010) (citing 5 Collier on Bankruptcy ¶ 548.01 (16th ed. rev. 2010)).  Accordingly, Section 548(a)(1) of the Bankruptcy Code permits a trustee to:

> avoid any transfer . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> > (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted; or
> >
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

---

[22](...continued)
as Section 548 claims herein, unless otherwise noted.

Section 548(a)(1)(A) allows a trustee to avoid transfers that are actually fraudulent, while

Section 548(a)(1)(B) permits a trustee to avoid transfers that are constructively fraudulent.

In order to sustain a cause of action under Section 548(a)(1)(A), a trustee must establish

(i) a transfer of an interest of the debtor in property; (ii) made within two years before the debtor

filed for bankruptcy; and (iii) done with "actual intent to hinder, delay, or defraud" a creditor.

Wagner v. McAnena (In re Vaughan Co.), 2014 WL 3889193, *2 (Bankr. D. N.M. 2014) (citing

McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC), 439 B.R. 47, 68 (Bankr. S.D.

N.Y. 2010)).

A trustee's cause of action under Section 548(a)(1)(B) is often referred to as constructive

fraud because it omits any element of intent. To sustain a cause of action for a constructively

fraudulent transfer, a trustee must also first establish that there was a transfer of a debtor's

property interest within two years prior to the petition date, and then show that the debtor

received less than reasonably equivalent value in exchange for the transfer.  Additionally, the

trustee must demonstrate that either (a) the transfer was made when the debtor was insolvent or

the debtor became insolvent as a result of such transfer, (b) the debtor was engaged or about to

become engaged in a business or a transaction for which its remaining property represented an

unreasonably small capital, (c) the debtor intended to incur debts beyond its ability to repay them

as they matured, or (d) the debtor made the transfer to or for the benefit of an insider, under an

employment contract and not in the ordinary course of business. 11 U.S.C. § 548(a)(1)(B)(ii);

Ryan v. Montoya (In re Gonzales), 2011 WL 2619609 (Bankr. D. N.M. 2011).  This second

requirement is sometimes referred to as the "insolvency requirement," because a trustee must

prove the debtor was insolvent at the time of the transfer or otherwise in a "fragile financial

condition." Lofstedt v. Kendall (In re Kendall), 491 B.R. 191 (10th Cir. BAP 2013) (unpub).

Once a transfer of property has been avoided by a trustee as actually or constructively

fraudulent, such property may be recovered by a trustee for the benefit of the bankruptcy estate.

Specifically, Section 550 provides:

> (a) Except as otherwise provided in this section, to the extent that a
> transfer is avoided under section 544, 545, 547, 548, 549, 553(b),
> or 724(a) of this title, the trustee may recover, for the benefit of the
> estate, the property transferred, or, if the court so orders, the value
> of such property, from–
>
>> (1) the initial transferee of such transfer or the entity
>> for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such
>> initial transferee.

11 U.S.C. § 550(a).  In other words, after a trustee succeeds in avoiding a transfer under Section

548(a)(1) as fraudulent, Section 550(a) provides, with certain limitations or defenses not

applicable here, that the transferred property or its value may be recovered from the initial

transferee or its subsequent transferees.  Thus, if the specific property cannot be recovered, a

bankruptcy court may enter a money judgment against the transferee for the value of the property

in order "to restore the estate to the financial condition that it would have enjoyed if the transfer

had not occurred."  Weinman v. Fidelity Cap. Appreciation Fund (In re Integra Realty Res., Inc.),

354 F.3d 1246, 1266 (10th Cir. 2004) (quoting Hirsch v. Gersten (In re Centennial Textiles, Inc.),

220 B.R. 165, 176 (Bankr. S.D. N.Y. 1998)).

II.    **Application of Law to Facts.**

A.    **The Pretrial Order Governs the Transactions to be Considered as Allegedly Fraudulent Transfers under Plaintiff's Section 548 Claim.**

As expressed in Plaintiff's Closing Argument, Plaintiff seeks to avoid and recover three different categories of transfers made to Defendant from All Phase LLC: (i) assets transferred approximately seven months prior to the date All Phase LLC filed its bankruptcy petition, i.e. the Real Property, 2011 Truck, and Trailer; (ii) assets transferred in conjunction with or after All Phase LLC's filing of bankruptcy, i.e. all remaining assets of All Phase LLC, which includes Inventory and Equipment; and (iii) all money/funds transferred to Defendant, which includes funds in All Phase LLC's bank account on the Petition Date, All Phase LLC's account receivables for 2016, funds earned by All Phase LLC in 2017 (based on 1099's issued), and all profit or income received by Defendant from All Phase LLC in 2017 by way of cash withdrawals and internet transfers in the amount of $96,479.54.

However, only transfers made within two years **before** the date of the filing of the petition are potentially avoidable as fraudulent transfers pursuant to Section 548. With respect to unauthorized transfers of estate property that take place after the commencement of a bankruptcy case, a trustee may avoid such transactions pursuant to Section 549 ("Postpetition transactions"). Leonard v. Coolidge (In re Nat'l Audit Def. Network), 367 B.R. 207, 218 n.12 (Bankr. D. Nev. 2007) ("Federal fraudulent transfer laws are not directly applicable to [postpetition] transfers, however, as Section 548 only covers transfers occurring before the petition date."). Plaintiff does not mention Section 549 in either her Complaint or the Final Pretrial Order. As the Pretrial Order

definitively represents "a complete statement of all the contentions of the parties," and a trial court may reject contentions not included therein, Trujillo v. Uniroyal Corp., 608 F.2d 815, 817 (10th Cir. 1979), the Court declines to consider transfers made after the Petition Date of June 18, 2017.

Neither does Plaintiff's Complaint or the Final Pretrial Order refer to transfers from All Phase LLC to Defendant during the period January to June 2017 by way of cash withdrawals and internet transfers (which total $96,479.54). Although Plaintiff introduced evidence of these transfers at trial, Federal Rule of Civil Procedure 16, made applicable by Federal Rule of Bankruptcy Procedure 7016, provides that (i) the pretrial order controls the course of the action unless the Court modifies it[23] and (ii) it may be modified after issuance only to prevent manifest injustice. Certainly, the magnitude of Defendant's use of All Phase LLC's cash to fund his gambling habits is troublesome and provides a plausible ground for a fraudulent transfer claim, but Plaintiff never raised such a claim in the Complaint or the Pretrial Order. Moreover, Plaintiff neither argues that the Pretrial Order should be modified to include such claims nor proffers facts evidencing that such a modification is necessary to prevent "manifest injustice." Because the 2017 cash withdrawals and internet transfers are not part of the Final Pretrial Order, the Court also declines to consider these transfers.[24] Cortez v. Wal-Mart Stores, Inc., 460 F.3d 1268, 1277

---

[23]See also Scheduling Order [Doc. 30] entered on June 5, 2018 ("The Final Pretrial Order, when approved by the Court, shall constitute an order of the Court as to all matters contained therein and shall govern the trial of the case, superseding the prior pleadings. Fed. R. Bankr. P. 7016.").

[24]Plaintiff also introduced evidence of cash withdrawals and internet transfers from All Phase LLC's bank accounts by Defendant for his own benefit during 2016. See ¶ 40 above. However, like the 2017 withdrawals and transfers, these 2016 transfers were not identified in

(continued...)

(10th Cir. 2006) ("Claims, issues, defenses, or theories of damages not included in the pretrial

order are waived.").

    **B.**    **All Phase LLC's Transfers to Defendant Were Not Constructively**
        **Fraudulent.**

    Plaintiff argues transfers made to Defendant may be avoided as constructively fraudulent

under Section 548(a)(1)(B) because All Phase LLC was insolvent at the time of the transfers and

did not receive reasonably equivalent value in exchange therefore.  Plaintiff's Closing Argument at

4-5.  Plaintiff bears the burden of proving each element of her claim for avoiding the allegedly

fraudulent transfers by a preponderance of the evidence.  Weinman v. Walker (In re Adam

Aircraft Industries, Inc.), 510 B.R. 342, 352 (10th Cir. BAP 2014), aff'd, 805 F.3d 888 (10th Cir.

2015) (citing Kaler v. Craig (In re Craig), 144 F.3d 587, 590 (8th Cir. 1998)).  This includes

demonstrating that the transferred assets had value to the estate.  Yip v. Connedx Corp.

(In re Gomez), 560 B.R. 866, 873 (Bankr. S.D. Fla. 2016) (citing Ingalls v. SMTC Corp. (In re

SMTC Mfg. of Tex.), 421 B.R. 251, 278-79 (Bankr. W.D. Tex. 2009)).

    The Court concludes Defendant did, in fact, cause All Phase LLC to transfer certain

property to Defendant within the two-year look back period of Section 548(a)(1), i.e. June 18,

2015, to June 18, 2017.  These transfers include the Real Property, 2011 Truck, and Trailer.  The

transfers also apparently include Equipment and Inventory as Defendant claims he started doing

business as All Phase Systems at the end of 2016.  As to the insolvency requirement of Section

548(a)(1)(B)(ii)(I), with scheduled assets of only $203,712.28, but secured debts of $583,425.68

---

        24(...continued)
the Complaint or Pretrial Order, and further, were not mentioned in Plaintiff's Closing Argument.
Therefore, the Court will not consider the withdrawals or transfers as part of Plaintiff's Section
548 claim.

and unsecured debts of $350,103.39, the Court has no doubt that All Phase LLC was insolvent as of the Petition Date. Additionally, in light of the fact that Defendant attempted to "shut down" All Phase LLC in December 2016 in order to begin conducting business as All Phase Systems, the Court concludes All Phase LLC was insolvent as of December 12, 2016, when it transferred the Real Property, 2011 Truck, and Trailer to Defendant.

But in addition to All Phase LLC's insolvency at the time of these transfers, Section 548(a)(1)(B)(i) requires Plaintiff to prove that All Phase LLC did not receive reasonably equivalent value in exchange for the transfers to Defendant. Reasonably equivalent value is not defined in the Bankruptcy Code, but is intended "to protect creditors against the depletion of a bankruptcy estate." Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt., Inc.), 501 B.R. 462, 486 (Bankr. D. Mass. 2013) (quoting Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA Inc.), 680 F.3d 1298, 1311 (11th Cir. 2012)); see also Stillwater Nat'l Bank v. Kirtley (In re Solomon), 299 B.R. 626, 631 (10th Cir. BAP 2003) ("However, § 548 neither defines 'reasonably equivalent value' nor offers guidance for determining whether REV exists."). Neither is "reasonably equivalent value" susceptible to simple formulation. FNF Security Acquisition, Inc. v. Mercury Companies, Inc. (In re Mercury Companies, Inc.), 527 B.R. 438, 447 (D. Colo. 2015) (quoting Sharp v. Chase Manhattan Bank USA, N.A., (In re Comm'l Fin. Servs.), 350 B.R. 559, 578 (Bankr. N.D. Okla. 2005) (internal quotation marks omitted)). Whether a transfer is made in exchange for reasonably equivalent value under § 548(a)(1)(B) is largely a question of fact, as to which the trier of fact has considerable latitude. Clark v. Security Pacific Business Credit, Inc. (In re Wes Dor, Inc.),

26

996 F.2d 237, 242 (10th Cir. 1993) (citing 4 Collier on Bankruptcy ¶ 548.09, at 548-112 (15th ed. 1993)).

Courts conduct a two-prong analysis "to determine whether a debtor has received reasonably equivalent value in exchange for its transfer of an interest in its property to another." Gomez, 560 B.R. at 873 (quoting 8699 Biscayne, LLC v. Indigo Real Estate LLC (In re 8699 Biscayne, LLC), 2012 Bankr. LEXIS 1244 at *13 (Bankr. S.D. Fla. 2012)). First, courts question whether the debtor received value; second, courts question whether that value was reasonably equivalent to what the debtor gave up. Goshen Mortg., LLC v. Altier (In re Altier), 2017 WL 1011416, *3 (Bankr. M.D. Fla. 2017). See also LTF Real Estate Co., Inc. v First American Title Ins. Co. (In re Expert S. Tulsa, LLC, 522 B.R. 634, 652 (10th Cir. BAP 2014) ("A court makes three inquiries to examine REV: (1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received."). As stated by the Tenth Circuit Court of Appeals, "[a] determination of whether a transfer involved the exchange of reasonably equivalent value requires consideration of whether or not the transferor's unsecured creditors were better off before or after the transfer." Rajala v. Gardner, 661 F. App'x 512, 516-17 (10th Cir. 2016) (unpublished) (quoting In re Expert S. Tulsa, LLC, 534 B.R. 400, 413 (10th Cir. BAP 2015), aff'd, 842 F.3d 1293 (10th Cir. 2016)).

In this case, it is undisputed that All Phase LLC received nothing from Defendant in exchange for any of the transferred property. This is where Plaintiff would have the Court stop its analysis, and certainly the undisputed facts of the transfers themselves and the lack of consideration therefor make such an argument seemingly persuasive. But the reasonably

equivalent value inquiry does not end there.  Rather, a further step is mandated and requires the

Court to measure the value of what All Phase LLC received, i.e. nothing, against the value of

what All Phase LLC transferred.  Barber v. Iverson (In re Iverson), 2008 WL 2796998, *5

(Bankr. C.D. Ill. 2008) (citing Matter of Vitreous Steel Products Co.), 911 F.2d 1223, 1234-35

(7th Cir. 1990)).[25]  This inquiry necessarily focuses on whether or not All Phase LLC's unsecured

creditors were better off before or after the transfers, i.e. whether the transferred property actually

had value that can be recovered for the benefit of the estate.  At trial, however, Plaintiff failed to

focus on whether the transferred assets had value that could be recovered for the benefit of the

estate.  Nevertheless, a brief review of All Phase LLC's Schedule D indicates that **all** of its assets

were subject to liens of creditors as of the Petition Date.

Generally speaking, pre-petition liens pass through bankruptcy unaffected and are

enforceable against the property to which the lien has attached.  Dewsnup v. Timm, 502 U.S. 410,

417 (1992); Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991); Haberman v. St. John Nat'l Bank

(In re Haberman), 516 F.3d 1207, 1209 (10th Cir. 2008); United States v. Brown, 2011 WL

13238431, *2 (D. Utah 2011).  The Bankruptcy Code creates exceptions to this general rule,

notably a trustee's strong arm powers to avoid liens and transfers under Section 544 and preserve

them for the benefit of the bankruptcy estate pursuant to Section 551.  Section 546, however,

limits the time within which a trustee may avoid liens under Section 544.  In this case, the

applicable rule is that such actions or proceedings may not be commenced after two years after

the entry of the order for relief.  Plaintiff has not avoided the liens of any secured creditors, and it

---

[25]Value of the property transferred is measured as of the time of the transfer.
Grochocinski v. Knippen (In re Knippen), 355 B.R. 710, 726 (Bankr. N.D. Ill. 2006) (citing
Baldi v. Lynch (In re McCook Metals, LLC), 319 B.R. 570, 589 (Bankr. N.D. Ill. 2005)).

has now been more than two years since the Petition Date.  Therefore, the property transferred

from All Phase LLC to Defendant remains subject to the liens of All Phase LLC's secured

creditors post-transfer.

Additionally, a security interest in an asset will continue even after a chapter 7 trustee

avoids a transfer by debtor as a preference or fraudulent transfer and recovers it for the benefit of

the estate.  John Hancock Life Ins. Co. v. Jankowski (In re Hospitality Inv. Corp.), 283 B.R. 451,

453 (Bankr. E.D. Mich. 2002).  See also In re Veterans Choice Mortg., 291 B.R. 894, 896

(Bankr. S.D. Ga. 2003) ("[I]f a trustee pursues an action to recover property fraudulently

conveyed, then any property recoverable by the trustee that is subject to a lien continues to be

subject to the lien after recovery.").  Thus, even if Plaintiff were to successfully avoid the alleged

fraudulent transfers and recover the transferred property, it remains subject to the liens of All

Phase LLC's secured creditors.

The Statement of Financial Affairs filed by All Phase LLC indicates that on December 12,

2016, it transferred Real Property valued at $76,000, the 2011 Truck valued at $7,225, and the

Trailer valued at $4,300 to Defendant.  However, per All Phase LLC's Schedule D, it appears

that all three of those assets were subject to liens in excess of their value.  Further, all of All Phase

LLC's remaining assets as of the Petition Date, valued in total at $203,712.28, also appear to be

subject to liens in excess of their value.  See Findings of Fact 18-22 above.  Plaintiff, who had the

burden of proving that All Phase LLC transferred something of value for purposes of her Section

548 fraudulent transfer claim, presented absolutely no evidence at trial to suggest All Phase LLC's

assets were less than fully encumbered and, therefore, had value to the estate.

29

A chapter 7 trustee in bankruptcy represents the interest of the unsecured creditors and not the secured creditors. In re Chicago Lutheran Hosp. Ass'n, 89 B.R. 719 (Bankr. N.D. Ill. 1988), (citing Matter of Trim-X, Inc., 695 F.2d 296, 301 (7th Cir. 1982)). "A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured." Jubber v. Bird (In re Bird), 577 B.R. 365, 375 (10th Cir. BAP 2017) (quoting In re All Island Truck Leasing Corp., 546 B.R. 522, 532 (Bankr. E.D. N.Y. 2016)).[26] Here, because the assets Plaintiff alleges were fraudulently transferred have no value in excess of the liens of the secured creditors, All Phase LLC's unsecured creditors are no worse off after the transfers than they were before the transfers.[27] A bankruptcy estate cannot be depleted by the transfer of a valueless asset. In other words, it is not possible to receive less than reasonably equivalent value for an asset that has no value. Gomez, 560 B.R. at 873. See also Tolz v. Miller (In re Todd), 391 B.R. 504, 509 (Bankr. S.D. Fla. 2008) (bare legal title in property transferred by debtor was valueless, which inherently

---

[26]In Bird, the Tenth Circuit Bankruptcy Appellate Panel, in addressing a chapter 7 trustee's attempt to liquidate over-encumbered property, stated "[A] trustee's duty to liquidate property of the estate is not without its limits. In certain situations, such as when liquidation will result in little to no payment to the unsecured creditors, the proper course of action is for a trustee to abandon the property pursuant to § 554." Bird, 577 B.R. at 376. The same can be said of a Plaintiff's pursuit of avoidable transfers which will bring little or no benefit to unsecured creditors given their encumbered status.

[27]This argument is even stronger under the OUFTA because property subject to a valid lien is expressly excluded from the definition of "asset" for purposes of fraudulent transfers. "Significantly, the OUFTA avoidance power is only available when the property 'transfer' was of a debtor's 'asset.'" Expert South Tulsa, 534 B.R. at 409 (citing Okla. Stat. tit. 24, § 113(2)(a) and (12) ("'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with *an asset or an interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance. 'Asset' means property of a debtor, but the term does not include . . . property to the extent it is encumbered by a valid lien.")).

means debtor did not receive less than equivalent value in exchange therefore); Kapila v. Moodie (In re Moodie), 362 B.R. 554, 562 (Bankr. S.D. Fla. 2007) (gratuitous pre-petition transfer of bare legal title was not transfer for less than reasonably equivalent value).

Given the complete absence of evidence that All Phase LLC's assets had any economic value that would inure to the benefit of the estate, notwithstanding that such assets were, in fact, transferred by All Phase LLC to Defendant for no consideration, Plaintiff failed to establish that All Phase LLC did not receive reasonably equivalent value therefor as required by Section 548. Because the requirement that the transfers were made for less than reasonably equivalent value is not met, the transfers cannot be constructively fraudulent.

**C.    All Phase LLC's Transfers to Defendant Are Subject to Avoidance as Actually Fraudulent.**

To prevail on her claim that the transfers of property from All Phase LLC to Defendant were actually fraudulent, Plaintiff must prove (i) there was a transfer of an interest of the debtor in property made within two years before the debtor filed for bankruptcy; and (ii) such transfer was done with "actual intent to hinder, delay, or defraud" a creditor. Zubrod v. Keffer (In re Keffer), 307 B.R. 731, *3 n.4 (10th Cir. BAP 2004). The Court has already concluded that there were transfers of debtor All Phase LLC's assets during the statutory two-year look back period. The remaining question is whether Defendant caused All Phase LLC to make those transfers with actual intent to hinder, delay, or defraud its creditors.

A debtor rarely admits that he or she acted with fraudulent intent. Zubrod v. Kelsey (In re Kelsey), 270 B.R. 776, 782 (10th Cir. BAP 2001). Therefore, courts consider circumstantial evidence to determine whether certain badges of fraud are present based on a fairly

standard set of factors: "whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfer; pending or threatened litigation against the debtor at the time of transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; the debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to an insider of the debtor." Kelsey, 270 B.R. at 782 (10th Cir. BAP 2001) (citing Taylor v. Rupp (In re Taylor), 133 F.3d 1336, 1338-39 (10th Cir. 1998)).

In Plaintiff's Closing Argument, she contends that many of the badges of fraud set forth above are present in this case. The Court agrees. Most notably, the transfers were (i) of substantially all of All Phase LLC's assets (in the aggregate) (ii) to an insider (iii) at the time All Phase LLC was insolvent (iv) following default on a debt with respect to which Defendant had signed a confession of judgment. In fact, this case presents a textbook example of fraudulent transfers. Defendant's main defenses to Plaintiff's claim for avoiding the transfers as actually fraudulent are: (i) he relied on advice of counsel to make the transfers; and (ii) he believed All Phase LLC and himself to be one and the same, which allowed him to do whatever he liked with All Phase LLC's assets. Such arguments are lamentably insufficient to overcome the badges of fraud present and the totality of the circumstances in this case.

First, as previously mentioned, counsel who filed All Phase LLC's and Defendant's bankruptcy cases unfortunately died in early 2019 before trial of this case. Therefore, Plaintiff was without direct evidence to impeach Defendant's testimony on this issue. Although Defendant

repeatedly asserted that he and All Phase LLC were one and the same, the Court finds it incredibly difficult to believe that previous counsel would completely ignore the distinction between a corporate entity and its sole owner and advise Defendant to transfer All Phase LLC's property to himself. Defendant's argument in this regard falls woefully short of negating his alleged intent to delay, hinder, or defraud creditors, especially in light of the other numerous badges of fraud present.

Moreover, Defendant's asserted belief that there was no difference between himself and All Phase LLC is belied by his actions. If Defendant truly thought that to be the case, there would have been no reason for Defendant to cease doing business as All Phase LLC in December 2016, yet continue operating the same business as a sole proprietorship thereafter. Even if the assets transferred to Defendant remained subject to the liens of secured creditors, All Phase LLC also scheduled unsecured debts of $350,103.39. It requires no leap of thought at all on the Court's part to conclude that by ceasing operations of All Phase LLC and subsequently dissolving it, Defendant, at a minimum, intended to hinder or delay All Phase LLC's unsecured creditors from reaching the assets All Phase LLC used to produce income.

Traditional badges of fraud are not the only indicators of actual fraudulent intent. Instead, "[t]hey are intended to be guideposts – as opposed to ineluctable factors – in a court's analysis of the totality of the circumstances to determine whether a transfer was made with actual fraudulent intent." Sher v. JPMorgan Chase Funding (In re TMST, Inc.), 2019 WL 6883776, *14 (Bankr. D. Md. Dec. 17, 2019) (quoting Furr v. TD Bank, N.A. (In re Rollaguard Security, LLC), 591 B.R. 895, 918 (Bankr. S.D. Fla. 2018) (emphasis added). Examining the totality of the circumstances here reveals other factors to support the Court's conclusion that the transfers of

33

assets from All Phase LLC to Defendant were actually fraudulent.

First, with respect to the discovery process in this case, Defendant was extremely uncooperative. Plaintiff was forced to obtain this Court's assistance in compelling Defendant to comply with her discovery requests. See ¶ 52 above. Defendant's inexcusable conduct in this regard is evidence of his lack of candor and a desire to prevent a thorough investigation of his financial affairs and those of All Phase LLC by Plaintiff, which is suggestive of his intent to delay, hinder, or defraud All Phase LLC's creditors in making the subject transfers.

Additionally, Defendant's withdrawals of enormous sums of cash from All Phase LLC's bank accounts primarily at gambling venues are illustrative of fraudulent intent. All Phase LLC was obviously in serious financial trouble during the second half of 2016. That Defendant was forced to resort to more extreme financing arrangements to keep the business going, such as the "Payment Rights Purchase and Sale Agreement" with Everest in October 2016 (see ¶¶ 6-8 above) is evidence of All Phase LLC's precarious situation. Yet all the while, Defendant continued to use All Phase LLC's money to gamble to the detriment of its creditors. In fact, the only logical conclusion is that All Phase LLC's demise was on account of Defendant's gambling, as it had numerous roofing contracts during the time period in question, and Defendant continued to operate the same business as a sole proprietor in 2017.

Defendant's withdrawals from All Phase LLC's bank accounts for his gambling purposes represent a general pattern of removing and dissipating All Phase LLC's assets that could have been paid to creditors, and are indicative of fraudulent transfers.[28] See Meeks v. Red River

---

[28]Although the Court has declined to consider whether the cash withdrawals themselves are avoidable fraudulent transfers based on insufficient pleading by Plaintiff, that does not prevent
(continued...)

Entm't of Shreveport (In re Armstrong), 285 F.3d 1092 (8th Cir. 2002) (trustee successfully avoided, on an actual fraud theory under section 548(a)(1) of the Code, transfers made by a Ponzi scheme operator to Harrah's casino to cover his gambling expenses and debts); Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195, 1197 (9th Cir. 1997) (cashier's check purchased by corporate debtor paid in partial satisfaction of gambling debts incurred by debtor's principal was fraudulent transfer within meaning of Section 548)).  Failing to consider Defendant's gambling habit (that apparently precipitated All Phase LLC's bankruptcy and dissolution) as evidence of actual fraudulent intent would be tantamount to putting blinders on.

Based on the evidence presented, the Court concludes that Plaintiff established, via traditional badges of fraud and other factors, that Defendant caused All Phase LLC to transfer assets to himself with actual intent to hinder, delay, or defraud All Phase LLC's creditors. Therefore, such transfers are subject to avoidance pursuant to section 548(a)(1)(A).

> **D.** **Even Though the Transfers May Be Avoided as Actually Fraudulent, Recovery under Section 550 is Pointless.**

Even though the Court has concluded that certain transfers of All Phase LLC's assets may be avoided as actually fraudulent, recovering those assets from Defendant as transferee pursuant to Section 550 is a separate action that is conceptually different and requires its own analysis. Kraft, LLC v. Greiner (In re Kraft, LLC), 429 B.R. 637, 666-67 (Bankr. N.D. Ind. 2010).  "[T]he fact that avoidance is a necessary precondition to § 550 recovery does not imply that avoidance is a sufficient condition for § 550 recovery or that avoidance automatically triggers § 550

---

[28](...continued)
them from being considered as evidence of Defendant's actual intent to delay, hinder, or defraud creditors.

recovery." Suhar v. Burns, (In re Burns), 322 F.3d 421, 427 (6th Cir. 2003). This is because the

language of Section 550 – "the trustee *may* recover"– is permissive, not mandatory. Rodriguez v.

Drive Fin. Serv., L.P. (In re Trout), 609 F.3d 1106, 1110 (10th Cir. 2010) ("'[T]he language of

§ 550 is permissive rather than mandatory (the trustee 'must' recover) or descriptive (the trustee

'thereby' recovers.") (quoting Burns, 322 F.3d at 428)).

        As one bankruptcy court explained, because Section 550 requires recovery to be for the

benefit of the estate, "[a]voidance is always necessary for recovery, but recovery is not always

necessary or even useful after avoidance." Barber v. McCord Auto Supply, Inc. (In re Pearson

Indus., Inc.), 178 B.R. 753, 759 (Bankr. C.D. Ill. 1995) (citing Bankruptcy, Epstein, Nickles &

White, Vol. 2 § 6-79). Instead, "[t]he proper focus of recovery under [Section] 550(a) is not on

what the transferee gained but rather on what the bankruptcy estate lost as a result of the

transfer." Rushton v. Bank of Utah (In re C.W. Mining Company), 477 B.R. 176, 185 (10th Cir.

2010), aff'd 749 F.3d 895 (10th Cir. 2014) (citing Weinman v. Fidelity Capital Appreciation Fund

(In re Integra Realty Res., Inc.) 354 F.3d 1246, 1267 (10th Cir. 2004)). See also Kraft, 429 B.R.

at 667 (citing P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner &

Company), 140 F.3d 1111, 1118 (7th Cir. 1998)) (The "Bankruptcy Code does not permit the

avoidance of a preferential transfer unless the recovery would be for the benefit of the estate.").

        Here, there are several reasons that recovery of the avoided transfers would not be

"useful." First, Plaintiff did not conclusively establish that any of the transferred assets have

value in excess of liens. "And where property transferred has a security interest over and above

the value of the property, the weight of authority dictates that a trustee may not recover because

36

the estate would not benefit." Nathan v. Brownstone Plastics, LLC, 511 B.R. 863, 869 (D. E.D. Mich. 2014).

Plaintiff asserts there is value in excess of liens with respect to the Real Property, 2011 Truck, Trailer, Equipment and Inventory. However, in calculating equity, Plaintiff takes into account only: (i) the mortgage held by BancFirst on the Real Property; (ii) the UCC Financing Statement filed by BancFirst with respect to Equipment and Inventory; and (iii) the lien held by Century Trucks and Vans on the 2011 Ford F150. Plaintiff's Closing Argument at 10-11. According to All Phase LLC's Schedule D, there are numerous other creditors with debts secured by liens on all of All Phase LLC's assets that total over $400,000. See ¶ 21 above. Plaintiff did not seek to timely avoid any of these liens, and further, has not otherwise provided the Court with any information to suggest that All Phase LLC's property is not subject to the scheduled liens.[29]

Additionally, recovery of the assets is not "useful" in this particular case because Defendant, the transferee, filed his individual chapter 7 petition about six months after All Phase LLC filed bankruptcy. In doing so, he **listed all of the transferred assets** on his bankruptcy schedules, together with **every single debt scheduled by All Phase LLC**, both secured and

---

[29]In fact, it seems perhaps that Plaintiff completely neglected to consider the impact of any scheduled liens on All Phase LLC's property before filing this adversary on November 1, 2017. For example, the Trustee's Interim Report for the period ending December 31, 2017, filed on January 15, 2018 (Bky. Doc. 19), shows no decrease in the estimated net value of any of All Phase LLC's assets on account of liens. On the other hand, when Defendant filed his individual bankruptcy scheduling the same assets and liabilities as All Phase LLC, that chapter 7 trustee abandoned the estate's interest in all office equipment and supplies, machinery, and equipment and inventory used in the business on the basis that liens on such property exceeded its value and subsequently filed an interim report indicating that none of the estate's assets had any net value in excess of liens. See ¶ 39 above.

unsecured.  Thus, All Phase LLC's creditors had ample opportunity to pursue their assets and/or claims in Defendant's bankruptcy case.

In sum, it would be pointless to require Defendant to return the assets to Plaintiff as the estate has no equity in the assets "and the return would not benefit the bankruptcy estate and would be a waste of judicial and estate resources." C.W. Mining, 477 B.R. at 191; Pearson Indus., Inc., 178 B.R. at 757 (citing Wellman v. Wellman, 933 F.2d 215 (4th Cir. 1991)) (Sections "548 and 550 provide for avoidances of transfers and allow recovery of the transferred property or its value only if the recovery is for the benefit of the estate.").  Therefore, Plaintiff is not entitled to recovery of the fraudulently transferred assets under Section 550.[30]

## **CONCLUSION**

Mark Twain's quote, "Truth is stranger than fiction," epitomizes this case.  Never before has this Court been faced with facts so clearly establishing fraudulent transfers of assets to an insider for absolutely no consideration yet resulting in no recovery for the bankruptcy estate.  But, when all of the evidence is analyzed, the transfers by All Phase LLC to Defendant, though avoidable under Section 548(a)(1)(A),[31] are not recoverable under Section 550.  Plaintiff simply failed to establish that the All Phase LLC assets transferred to Defendant had value in excess of liens encumbering such assets and would, therefore, benefit the estate.  Therefore, judgment will be entered in favor of Defendant on all claims in Plaintiff's Complaint except with respect to a

---

[30]Denial of recovery under Section 550 also negates Plaintiff's claim for turnover under Section 542.

[31]The transfers are not, however, subject to avoidance pursuant to the Oklahoma Uniform Fraudulent Transfer Act because they were fully encumbered.  See footnote 26 above.

38

conclusion that Defendant made actually fraudulent transfers,[32] and in Plaintiff's favor on Defendant's counterclaim.[33]

IT IS SO ORDERED.

# # #

---

[32]Although he will not be required to turn over any fraudulently transferred assets or the value thereof to Plaintiff, under the circumstances presented here, Defendant's actions are not without serious consequences. The fraudulent transfer of a corporate entity's assets to an insider forms the basis for denying such insider a discharge in his own bankruptcy case under Section 727(a)(2) and (7). Plaintiff's claim against Defendant for denial of discharge is the subject of Adversary Proceeding 18-01038 in Defendant's bankruptcy case (Case No. 17-15219) that was tried together with this adversary, but is addressed in a separate Findings of Fact and Conclusions of Law entered in that case.

[33]As mentioned above, Defendant's request for abandonment must be brought pursuant to motion under Section 554.